### GRIFFIN v. FLANK.

(Supreme Court, Appellate Division, First Department. May 21, 1909.)

1. MASTER AND SERVANT (§§ 101, 102*) — INJURY TO SERVANT — CONDITION OF MACHINERY.

The master is not required to provide the best instruments and machinery known, and if he procures machinery of the ordinary kind from a responsible dealer, who installs it in the ordinary way, his duty seems to be performed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 182; Dec. Dig. §§ 101, 102.*]

2. MASTER AND SERVANT (§ 105*) — INJURY TO SERVANT — CONDITION OF MACHINERY—CUSTOMARY METHODS.

The failure of the master to place lock nuts on bolts in a pulley to prevent the pulley from becoming loose on the shaft is not necessarily negligence, where such nuts have never been used for that purpose.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 186; Dec. Dig. § 105.*] .

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. MASTER AND SERVANT (§ 103\*) — INJURY TO SERVANT — INSPECTION OF MACHINERY—DELEGATION OF DUTY.**

The fact that the master employs a competent person to inspect the machinery does not relieve the master of his liability for injuries if the inspector does not properly inspect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.\*]

**4. MASTER AND SERVANT (§ 286\*)—INJURY TO SERVANT—INSPECTION OF MACHINERY—QUESTION FOR JURY.**

Where a pulley became loose and fell from the shaft injuring an employé 20 minutes after the machinery was started in the morning, whether there was a proper or negligent inspection of the machinery before starting was a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1029; Dec. Dig. § 286.\*]

**5. APPEAL AND ERROR (§ 927\*)—REVIEW OF EVIDENCE—DIRECTION OF VERDICT.**

On review of a judgment of dismissal at the close of plaintiff's case, the evidence must be reviewed in the light most favorable to plaintiff.

・ [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.\*]

Appeal from Appellate Term.

Action by Katherine Griffin against Michael L. Flank. From an order affirming a judgment for defendant, dismissing the complaint on the merits, plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Wellman, Gooch & Smyth (Sumner B. Stiles, of counsel), for appellant.

Rosenthal, Steckler & Levi (Alexander Rosenthal, of counsel) for respondent.

CLARKE, J. This is an appeal from an order of the Appellate Term affirming a dismissal of the complaint at the close of plaintiff's case in an action in the City Court to recover damages by an employé against her employer. The trial judge dismissed the complaint because be believed he was compelled to do so by the decision of the Appellate Term on the former trial, reversing a judgment entered on a verdict for the plaintiff, reported in 48 Misc. Rep. 617, 95 N. Y. Supp. 546. The court there said:

"There being no evidence of any negligent act or omission on the part of the defendant, the learned court applied the rule of res ipsa loquitur, and charged the jury that plaintiff had made out a prima facie case of negligence by simply proving that the wheel fell from the shaft and struck her. In this we consider that error was committed. \* \* \* In the present case there was absolutely nothing in the attendant circumstances to suggest that defendant had failed in any duty which he owed to plaintiff. \* \* \*' As the facts were disclosed by the evidence, there was no room for the application of the rule invoked by the court. Since this error was fundamental, there being no evidence of negligence, if the fact that the pulley fell was not in itself such evidence, it follows that the judgment must be reversed and a new trial granted."

A different case is presented on this record. The complaint alleges that it was the duty of the defendant to provide a good, safe, and se-

cure place for the plaintiff to perform her work and to provide safe and suitable machinery for the plaintiff's use, and to keep the same in proper repair, to inspect or cause to be inspected the machines and machinery, but that the defendant, disregarding his duty, provided an unsafe and defective place, failed to inspect or cause to be inspected the machinery, and caused to be used, maintained, and operated a shafting and fly wheel and the equipments and attachments thereto belonging, operating the embroidering machines, which were defective and unfit for the purposes for which they were used.

The evidence showed that the plaintiff's position at work was at an embroidering machine run by power. She was located under a wooden pulley, known as a split pulley, about 18 or 20 inches in diameter with 3-inch face, weighing from 10 to 20 pounds, located on the end of the shaft, which was about 6 feet over her head as she sat. This pulley was divided in the center from circumference to circumference; the two several parts being attached to each other by cross-pieces or spokes, held together by two or four bolts about a half or five-eighths of an inch in diameter with a thread about an inch and a half in length at each end of the bolt with a nut on each end screwed up tight. Four pieces of wood, called a "bush," were set up within the hole in the center of the pulley and being so set up, and the nuts being properly screwed down, fastened the pulley to the shafting. The pulley was just beyond the last anchor or support of the shafting. At the extreme end of the shaft there was what is called a "collar" set upon said shaft by a countersunk screw. This collar was about 8 inches from the pulley. There is evidence by an expert that the proper way of setting up this collar would be close against this pulley so that it would be held in position on one side by the collar and on the other by the anchor. The effect of the rotation is to force the pulley away from the anchor and towards the end of the shaft. It is in evidence: That the nuts on the bolts, which hold the two parts of the pulley in position, become loosened by the effect of the weight and the rotation and have to be tightened from time to time; that if the nuts loosen sufficiently the two halves of the pulley will separate so far that the bush will fall out and, the aperture so caused being large enough, then the rotation, causing the pulley to slide towards the end of the shaft, will take it over the collar and it will fly off. This is what happened. After the accident the pulley was found on the floor with the nuts loose, the halves separated, and the bush out. In falling the pulley hit the plaintiff, causing the injuries complained of.

The appellant claims that a question of fact was presented:

First, in regard to the proper installation of the pulley: The testimony of the expert called by the plaintiff was to the effect that the proper installation required the collar to be close against the pulley, and that, if so placed, even if the nuts loosened up, the bush could not have been forced out. He also testified that a lock nut should have been used to secure the two halves of the pulley. But the master is not required to provide the best instruments and machinery known, and, so far as lock nuts are concerned, there is no evidence that such were ever used on pulleys of this kind, and, as the defendant procured ma-

chinery of the ordinary kind from a reputable firm who installed it in the usual way, his duty seems to have been performed.

Second, on the question of proper inspection: This is the master's duty, which cannot be delegated, and the fact that the master employs a competent man to inspect does not relieve the master of his liability, if the inspector does not properly inspect. Byrne v. Eastman's Co., 163 N. Y. 461, 57 N. E. 738; McGuire v. Bell Tel. Co., 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437. This accident occurred 20 minutes after 8 in the morning; the plaintiff having gone to work at 8 o'clock. The foreman testified that it was his duty to inspect, that he knew that these bolts were liable to loosen, that it was his duty to tighten them, and that he had tightened them on many occasions. He testified, generally, that he had inspected the machinery that morning, but he did not testify that he inspected these particular bolts on this particular wheel. It is conceded that inspection was easy, and the looseness of these bolts and nuts could have been readily discovered by proper inspection. They were in plain sight if the inspector got close enough to the wheel. I think that as the foreman, who said that he properly inspected, was the employé of the defendant, and that, if negligence there was, it was his, it was for the jury to say whether he had performed his duty, and that, as the accident occurred so shortly after the machinery started up, this, coupled with the condition of the wheel when examined after the accident, presented a question of fact which the jury alone could determine as to whether, under all the circumstances, there had been a proper or negligent inspection.

Upon a dismissal at the close of the plaintiff's case, the evidence must be viewed in the light most favorable to the plaintiff, and, as we think a question of fact was presented, the dismissal was error, the order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.